UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STEPHEN HARRINGTON,  :
    Petitioner,  :
       : CIVIL ACTION NO.
v.  : 3:08cv01864 (SRU)
       :
UNITED STATES OF AMERICA,  :
    Respondent.  :

**RULING ON MOTION TO VACATE, SET
ASIDE, OR CORRECT A SENTENCE**

Under 18 U.S.C. § 922(g), a convicted felon is prohibited from possessing a firearm. The Armed Career Criminal Act ("ACCA") imposes a mandatory minimum fifteen-year sentence on a violator of section 922(g) who has three previous convictions "for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). Stephen Harrington was convicted under section 922(g), and his criminal past qualified him for a sentence enhancement under the ACCA. Accordingly, he was sentenced to 180 months in prison – the statutory minimum.

Harrington filed this habeas corpus petition pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of counsel in contravention of the Sixth Amendment. Specifically, he argues that two of his previous convictions do not qualify as violent felonies or serious drug offenses under the ACCA, and that his attorney should have contested their categorization as such at sentencing and on appeal. For the reasons that follow, Harrington's motion is denied.

**I.    Background**

On March 17, 2005, Harrington pleaded guilty to unlawful possession of a firearm in violation of 18 U.S.C. § 922(g). Ordinarily, his penalty would have been limited to a fine and ten years of imprisonment. 18 U.S.C. § 924(a)(2). However, section 924(e)(1) mandates a minimum of fifteen years of imprisonment for anyone with three prior convictions for a "violent

felony" or "serious drug crime." Harrington has four potentially qualifying prior convictions: two for robbery in the first degree, in 1987 and 1999; one for sale of narcotics, in 1991; and one for unlawful restraint, in 1999. Because I determined that his criminal history qualified Harrington as an Armed Career Criminal ("ACC") under section 924(e), I sentenced him to fifteen years of imprisonment on December 21, 2005. The sentence was affirmed by the Second Circuit by summary order on September 20, 2007, and the Supreme Court denied Harrington's petition for a writ of certiorari on February 19, 2008.

Harrington filed a timely section 2255 motion *pro se* on December 3, 2008.[1] He alleges that his "counsel performed deficiently" at trial and on appeal by failing to raise issues regarding his classification as an ACC, and that his sentence was therefore illegally imposed. He claims first that his sale of narcotics conviction does not qualify as a "serious drug offense" within the meaning of the statute. Section 924(e)(2)(A)(ii) defines a "serious drug offense" in part as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))." Connecticut's controlled substance schedules include two drugs that are not on the federal list. Harrington contends that, because the record does not reflect the drug that was involved in his narcotics conviction, under *Shepard v. United States*, 544 U.S. 13 (2005), the conviction should not count under the ACCA.

Harrington also argues that his 1999 convictions for robbery and unlawful restraint should be regarded as a single "conviction" under the ACCA because they were consolidated for trial and sentencing. Harrington's attorney did not introduce either of these two arguments at

---

[1] An attorney was appointed to Harrington on July 20, 2010.

2

trial or on appeal. As a result, Harrington contends that his counsel's performance fell below the constitutional minimum guaranteed by the Fifth and Sixth Amendments.

On March 25, 2009, the government submitted a response to Harrington's motion. It maintains that Harrington's argument about the sale of narcotics conviction rests upon "legal developments that occurred *after* [he] was sentenced," and that it is therefore irrelevant to evaluating his counsel's performance at the time of his sentencing. Further, the government argues that the unambiguous language of the ACCA and Second Circuit precedent establish that crimes occurring at different times and in different places are regarded as separate convictions, regardless of whether they are later consolidated for trial.

Harrington filed a reply brief on April 21, 2009. Although he reiterates his argument about the narcotics conviction, he concedes the government's second point that the 1999 robbery and unlawful restraint convictions were separate convictions for the purposes of the ACCA. (Reply at 10.) He introduces one additional argument: that the crime of unlawful restraint does not qualify as a "violent felony" under section 924(e). The government addressed that argument in a sur-reply filed on May 6, 2009. Harrington filed an additional brief on October 14, 2010. In that brief, Harrington argued that his robbery convictions should not be considered violent felonies under the ACCA. The government responded on November 29, 2010.

## II. Standards

A prisoner in federal custody who believes that his "sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). The statute further provides:

> Unless the motion and the files and records of the case conclusively show that

3

> the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). Harrington alleges no factual dispute regarding his sentencing; rather, he makes a legal argument. Accordingly, no evidentiary hearing is necessary to determine his claim. *See LoCascio v. United States*, 395 F.3d 51, 56-57 (2d Cir. 2005); *see also Puglisi v. United States*, 586 F.3d 209, 213-16 (2d Cir. 2009) (providing extended discussion of standard petitioner must meet to show entitlement to evidentiary hearing, and applying that standard to a claim of ineffective assistance of counsel).

Harrington contends that he was sentenced in violation of the Constitution because his counsel at trial and on appeal was so ineffective as to fall below the requirement of the Sixth Amendment. The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), established the standard for evaluating the constitutional effectiveness of counsel. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. *Strickland* provides a two-part test for making that evaluation:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. In other words, not only must Harrington show that "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, but also that "there is a reasonable

4

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. The Court made it clear that counsel's conduct must be evaluated from his or her perspective "at the time," without the "distorting effects of hindsight." *Id.* at 689. Harrington's burden is substantial: he must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

### III. Discussion

In essence, Harrington contends that, if his counsel had more competently challenged his classification as an ACC, there is a reasonable probability that his sentence would have been shorter. Specifically, he asserts that his counsel should have argued (1) that unlawful restraint is not a "violent felony," (2) that the robberies should not be considered violent felonies, and (3) that Harrington's sale of narcotics conviction does not qualify as "serious drug offense" because the Connecticut definition of a controlled substance is broader than the federal definition. The government maintains that all four of Harrington's prior convictions qualify as violent felonies or serious drug offenses. The ACCA requires imposition of an enhanced sentence if the defendant has three or more qualifying convictions. 18 U.S.C. § 922(e)(1). Therefore, in order for Harrington's habeas petition to succeed, he must win at least two of his arguments.

#### A. Unlawful Restraint Conviction

A court is limited in the information it may consider in determining whether a past conviction counts as a predicate offense under the ACCA. In *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court adopted a "categorical approach," holding that the determination whether a prior conviction is a serious drug offense or a violent felony for purposes of the ACCA should be made from an examination of the statutory elements of a crime, the charging

documents, and the jury instructions. *Id.* at 600, 602. In *Shepard v. United States*, 544 U.S. 13 (2005), the Court extended *Taylor*'s principles to situations where the prior conviction was obtained by a guilty plea rather than a jury verdict. In that case, the Court held that a sentencing judge is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 16, 26. In short, a court ought to "consider the offense generically, that is to say, [to] examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008).

The ACCA defines a violent felony as follows:

[A]ny crime punishable by imprisonment for a term exceeding one year . . . that–

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B). In Connecticut, unlawful restraint in the first degree is a class D felony that carries a term of imprisonment of not less than one year nor more than five years. Conn. Gen. Stat. § 53a-95(b); Conn. Gen. Stat. § 53a-35a; *see also State v. Salamon*, 287 Conn. 509, 531 n.20 (2008). Thus, the first element of the ACCA definition of "violent felony" is met because unlawful restraint is "punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 924(e)(2)(B).

Harrington argues in his reply brief that (1) "he never used violence against the victim" of

his offense, (2) counsel was deficient for failing to object to the Court's finding that unlawful restraint in the first degree qualifies as a crime of violence, and (3) he is entitled to an evidentiary hearing to explore the circumstances of his unlawful restraint conviction to determine whether it was a "violent felony." All three arguments are meritless.

His first argument disregards the plain language of the statute. Actual violence is not necessary under the ACCA definition; the "serious potential risk of physical injury to another" is sufficient. There can be a potential for violence even where it did not materialize. Harrington's second argument also fails. Under *Taylor* and *Shepard*, if the statutory definition of a crime places it categorically within the definition of "violent felony" in section 924(e), it counts as a predicate offense for sentencing enhancement. Under Connecticut law "[a] person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury." Conn. Gen. Stat. § 53a-95; *State v. Palmer*, 206 Conn. 40, 54 (1988). Notably, in Connecticut unlawful restraint in the second degree is defined identically except "substantial risk of physical injury" is not an element. *See* Conn. Gen. Stat. § 53a-96. The distinctive aggravating factor of first-degree unlawful restraint is the substantial risk of injury to the person restrained. Under the ACCA, a violent felony is "any crime . . . that . . . involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Given the substantial similarity between the language of Connecticut's definition of unlawful restraint and the ACCA's definition of violent felony, I conclude that it was not an "unprofessional error" for Harrington's counsel to decide not to argue that the conviction for unlawful restraint in the first degree was not a crime of violence under the ACCA.

Though the Second Circuit has never ruled precisely on the question, the decisions of other circuits support this conclusion. The Seventh Circuit has held that "unlawful restraint" under Illinois law qualifies as a violent felony for the ACCA. *United States v. Wallace*, 326 F.3d 881, 887 (7th Cir. 2003). Under Illinois law, a substantial risk of physical injury is not an element of unlawful restraint; the court concluded nonetheless that the crime of unlawful restraint by its nature always involves such a risk. *Id.* at 886-87 ("[W]e think that a situation where one person restrains another against his or her will presents a 'serious potential risk of physical injury,' whether it be in the initial restraint or the possible resulting confrontation between assailant and victim if the victim attempts to leave."). Other circuits have held that unlawful restraint or a similar crime qualifies as a "crime of violence" under section 4B1.2(a) of the United States Sentencing Guidelines, which use language identical to the ACCA.[2] *See, e.g.*, *United States v. Zamora*, 222 F.3d 756, 764-65 (10th Cir. 2000) (New Mexico false imprisonment statute); *United States v. Smith*, 284 F. App'x 943, 945 (3d Cir. 2008) (Pennsylvania unlawful restraint/involuntary servitude statute); *United States v. Riva*, 440 F.3d 722, 725 (5th Cir. 2006) (Texas unlawful restraint statute). In a somewhat different situation, the Second Circuit has held that the New York crime of unlawful imprisonment would categorically be a "crime of violence" within the meaning of 18 U.S.C. § 16(b), which defines a crime of violence to include an offense "that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Dickson v. Ashcroft*, 346 F.3d 44, 51 (2d Cir. 2003) (emphasis

---

[2] The sentencing guidelines define a crime of violence as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a).

8

omitted).  The consensus of courts of appeals regarding the violent nature of unlawful restraint seriously undercuts Harrington's claim.

In *Begay*, the Supreme Court recently considered the meaning of the statutory language at issue in this petition.  It held that the New Mexico felony of driving under the influence ("DUI") is not a "violent felony" for sentence enhancement under the ACCA.  Even though the Court assumed that "DUI involves conduct that 'presents a serious risk of potential injury to another,'" 553 U.S. at 141 (quoting section 924(e)(2)(B)(ii)), the Court nonetheless concluded that DUI "is simply too unlike the provision's listed examples [i.e., burglary, arson, extortion, or use of explosives] for us to believe that Congress intended the provision to cover it."  *Id.* at 142.  The listed crimes all involve "purposeful, violent, and aggressive conduct."  *Id.* at 144-45 (internal quotation marks and citation omitted).  Even assuming Harrington's attorney can be faulted for not pressing an argument adopted in a future decision, *Begay* would still not affect the merits of this petition.  Unlawful restraint is a crime similar to the listed provisions in that it would be "potentially more dangerous when firearms are involved."  *Id.* at 145 (internal quotation marks and citation omitted).  Treating unlawful restraint as a violent felony thus aligns with the ACCA's "basic purposes."  *See id.* at 146; *cf. United States v. Billups*, 536 F.3d 574, 583 (7th Cir. 2008) (concluding that the Seventh Circuit's determination in *Wallace* that unlawful restraint is a violent felony "is buttressed by the [Supreme] Court's decision in *Begay*").

Harrington's request for an evidentiary hearing must also be denied.  Under the "modified categorical approach" approved by the Supreme Court, *Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010), *citing Nijhawan v. Holder*, 129 S. Ct. 2294, 2302 (2009), the court would have to consult the trial record to determine the particular details of his conviction.  Such a

9

hearing would not provide any information relevant to determining whether Harrington's prior conviction was a violent felony. Indeed, the Supreme Court in *Taylor* adopted its categorical approach precisely to avoid that sort of burdensome factual inquiry. *Taylor*, 495 U.S. at 601 ("[T]he practical difficulties and potential unfairness of a factual approach are daunting."). The Second Circuit has recently affirmed that a district court may decline to hold an evidentiary hearing in a section 2255 proceeding where, as here, the petitioner "d[oes] not demonstrate a colorable claim of ineffective assistance." *Contino v. United States*, 535 F.3d 124, 128 (2d Cir. 2008).

B.  Robbery Convictions

Harrington next argues that his previous first-degree robbery convictions do not constitute "violent felonies" as defined in the ACCA. Again, the ACCA defines a violent felony as a crime that is punishable by a term of imprisonment of at least a year, and either (1) has as an element the use, attempted use, or threatened use of physical force, or (2) is a burglary, arson, extortion; use explosives; or otherwise involve conduct presenting a serious potential risk of injury to another. 18 U.S.C. § 924(e)(2)(B).

First degree robbery in Connecticut is a class B felony that carries a term of imprisonment of at least one but not more than twenty years. Conn. Gen. Stat. §§ 53a-134(b); 53a-35a(6). Thus, the first element of the ACCA definition of "violent felony" is met.

The second element is also met, because first degree robbery has as an element the use, attempted use, or threatened use of physical force. An individual is guilty of first degree robbery in Connecticut "when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: . . . (4)

displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." Conn. Gen. Stat. § 53a-134(a). A defendant has committed robbery as defined in section 53a-133 when that person:

> [I]n the course of committing a larceny, . . . uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

By its very definition, then, a Connecticut conviction for robbery constitutes a violent felony under the ACCA.

The petitioner relies on *United States v. Rosa*, 507 F.3d 1142 (2d Cir. 2007), for the proposition that first degree robbery is not a violent felony under the ACCA. In *Rosa*, the Court held that the defendant's juvenile conviction of robbery in the first degree did not constitute a violent felony because there was insufficient evidence that the defendant had possessed a firearm when committing that offense. But *Rosa* is distinguishable because the defendant was a juvenile when one of the violent acts was committed. Under section 924(e)(2)(B), when a crime is an act of juvenile delinquency, it can only be considered a violent felony if it is an imprisonable offense involving the use of a firearm, knife, or destructive device. That requirement does not exist for crimes that are not acts of juvenile delinquency.

Because the robbery convictions were violent felonies as defined in the ACCA, the failure of Harrington's counsel to raise that argument does not constitute the ineffective assistance of counsel.

C. <u>Sale of Narcotics Conviction</u>

Harrington's final line of argument – that his prior sale of narcotics conviction does not

qualify as a serious drug offense under the ACCA – has more potential. Indeed, at least one court has held that a Connecticut drug conviction does not qualify under the ACCA for sentence enhancement because the controlled substance schedules in Connecticut include drugs that are not controlled substances under federal law. *See, e.g.*, *United States v. Lopez*, 536 F. Supp. 2d 218 (D. Conn. 2008). However, I need not reach the question in this case. Even if Harrington's counsel can be faulted for not making the argument,[3] Harrington would still have to show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Because Harrington has the three qualifying offenses required by the ACCA even without the sale of narcotics conviction, and because he received the statutory minimum sentence under the ACCA, the result of the proceedings would have been no different if counsel had successfully challenged counting the drug conviction for purposes of the ACCA. Even in that event, Harrington ultimately would have received the same sentence.

## IV. Conclusion

For the reasons stated above, Harrington's section 2255 motion and his motion for summary judgment (doc. 15) are **DENIED**. The clerk shall close the file.

It is so ordered.

Dated this 10th day of May 2011, at Bridgeport, Connecticut.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

---

[3] It is by no means clear that Harrington's counsel should be faulted for failing to raise this issue because all of the relevant case law developed after Harrington's sentencing. *See Parisi v. United States*, 529 F.3d 134, 141 (holding that counsel was not constitutionally ineffective for "not anticipating . . . a development in the law.").